## THE DAUNTLESS.

### BOUKER CONTRACTING CO. v. BROOKLYN ASH REMOVAL CO. et al.

District Court, E. D. New York.

April 1, 1930.

Single & Single, of New York City, for libelant.

Alexander, Ash & Jones, of New York City, for Brooklyn Ash Removal Company, Inc.

Foley & Martin, of New York City, for Dauntless Towing Line, Inc.

Burlingham, Veeder, Masten & Fearey, of New York City, for Long Island R. Co.

CAMPBELL, District Judge.

The Dauntless Towing Line, Inc., the steamtug Dauntless, and the Long Island Railroad Company were impleaded under Rule 56 in Admiralty, on the petition of the respondent, Brooklyn Ash Removal Company, Inc.

The dump scow No. 75 H, owned by the libelant, was chartered to the respondent by the libelant on December 2, 1926, at a daily rate, time to start Friday, December 3, 1926, and continue until scow was returned by the respondent to place designated by libelant, upon the understanding and agreement that the scow was to be returned to the libelant in the same condition as when taken, to be free from all charges and liens for towage, wharfage, watching, etc., that the scow and the man in charge were to be entirely under the respondent's control at all times, and that the scow was to be kept afloat at all times.

On December 3, 1926, the scow 75 H was delivered to the respondent.

Shortly prior to December 6, 1926, the steamtug Dauntless No. 5, owned and operated by the respondent impleaded, Dauntless Towing Line, Inc., towed the scow 75 H light through the draw of the Long Island Railroad, which crossed Flushing creek, to the plant of the respondent at Flushing, without encountering any difficulty in passing through the draw.

The sides of the 75 H were straight up and down, and there was no warning that the abutments of the bridge were not straight up and down, and the water at the bottom of the same width as at the top in said draw.

On December 7, 1926, at about 12:05 o'clock a. m., the steamtug Dauntless, owned and operated by the respondent impleaded, Dauntless Towing Line, Inc., arrived at the Long Island Railroad bridge, which crosses Flushing creek, with dump scow 75 H, three-quarters loaded with mud, in tow on two short hawsers, having taken her in tow at the plant of the respondent at Flushing, at about 11:50 o'clock p. m., on December 6, 1926.

The Dauntless blew for the bridge to open, but, as trains were passing or expected to pass over the bridge, the draw was not opened until 1:10 o'clock a. m. ·

The Dauntless had expected to take the 75 H through at high tide, but the tide fell some while she was waiting for the bridge to open.

On the opening of the bridge the Dauntless proceeded to attempt to take the 75 H through, but did not succeed, as the 75 H stuck below the water line.

The 75 H was clear on the surface of the water, and the steamtug Dauntless, which had rope fenders on her bow, brought the same slowly into contact with the end of the 75 H, and attempted to push the 75 H back out of the draw, but without success, and at 3:10 a. m., being unable to get the 75 H out, the steamtug Dauntless left to report to her owner.

The tide continued to fall, and the port side of the 75 H did not seem to go down the

same as the starboard side, but the starboard side of the 75 H did go down until the 75 H had a list of two feet.

It was impossible when the Dauntless left for the draw to close, because, while the scow itself was clear, there was a temporary cabin on the scow which made the closing of the bridge impossible, and the supervisor of the bridge of the respondent impleaded, Long Island Railroad Company, ordered his men to remove the temporary cabin on the 75 H, which they did by chopping it off.

While this was being done the 75 H dropped some distance, and at low tide had made a considerable drop.

The bridge was closed and trains passed over it.

The captain of the scow called the attention of the men employed on the bridge to the danger of the position of the scow, both on the falling tide and when it again began to rise, and also protested when the employees of the respondent impleaded, Long Island Railroad Company, under orders of its supervisor of bridges, cut off the temporary cabin of the 75 H.

The 75 H came up with the tide and, a little after 8 o'clock a. m., lifted one end of the draw about two feet.

About 10 o'clock a. m. the wrecker of the Long Island Railroad Company arrived and lifted the other end of the draw to keep it level.

The supervisor of bridges of the respondent impleaded, Long Island Railroad Company, was in charge on the bridge, and its marine superintendent gave orders to the tugs.

There was a clearance on both sides of the bow of the 75 H, but she seemed to be stuck under water about twenty feet aft of the bow.

Two tugs, the Progressive and Russell, No. 18, came and attempted, under the orders of the marine superintendent of the respondent impleaded, Long Island Railroad Company, to push the 75 H through the draw, but she was not finally released until the afternoon, when she was taken out of the bridge above it.

Neither the steamtug Dauntless nor the Dauntless No. 5 had a line on the 75 H, nor came in contact with her while she was under the bridge, from the time the Dauntless left at about 3:10 a. m. until after the 75 H had been released, when the Dauntless No. 5 towed her back to the plant of the respondent at Flushing, from which she was later towed light through the same draw without any trouble being encountered.

The Dauntless did return between 9:30 and 10 o'clock a. m. but found the Long Island Railroad men in charge and took no part.

The Dauntless No. 5 came up with a boat in tow, but tied up as she could not get through.

The scow 75 H was able to go through the draw light without difficulty, and I agree with the supervisor of bridges, of the respondent impleaded, Long Island Railroad Company, that, unless something happened to the scow or the bridge, the scow should have come through the draw loaded, if she could come through the draw light.

The evidence shows that she could come through the draw light, and also that there was nothing the matter with the scow, as her sides were straight when she was chartered to respondent and after she came out of the draw.

The damage on the port side of the scow was due to squeezing, and there was no bottom damage.

The damage was not caused by the negligence of the respondent, the captain of the scow, or any one to whom respondent intrusted the scow, and the cause of the damage has been fully explained.

The damage was not caused by any negligence of the steamtug Dauntless or the Dauntless Towing Line, Inc.

The damage was caused by the negligence of the respondent impleaded, Long Island Railroad Company, in failing to give notice that the sides of the abutment were not straight up and down, as it seems to be clearly established that they were not, because, by reason of some obstacle or inequality of the side of the abutment, the side of the scow was squeezed and held in the draw; and the negligence of the servants or agents of the said respondent impleaded, Long Island Railroad Company, in the removal of the temporary cabin on the scow, in their failure to watch and open the draw when the tide rose, and not permit the scow to come up under the draw and lift one end, and in the manner in which it removed the scow.

A decree may be entered in favor of the libelant against the Long Island Railroad Company, with costs and the usual order of reference, and dismissing the libel as against the respondent without costs, and also dismissing the libel and petition as against the steamtug Dauntless and the Dauntless Towing Line, Inc., without costs.